# FOR PUBLICATION



FILED
Dec 06 2012, 8:52 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS:

**GEORGE M. PLEWS**
**DONNA C. MARRON**
**KAREN B. SCHEIDLER**
**JOSH S. TATUM**
Plews Shadley Racher & Braun LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
CONTINENTAL CASUALTY CO.:

**MARY K. REEDER**
Riley Bennett & Egloff, LLP
Indianapolis, Indiana

**STEVEN M. CRANE,** *Pro Hac Vice*
**BARBARA S. HODOUS,** *Pro Hac Vice*
Berkes Crane Robinson and Seal LLP
Los Angeles, California

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| THOMSON, INC. n/k/a TECHNICOLOR USA, INC., TECHNICOLOR, INC., and TECHNICOLOR LIMITED, | ) ) ) ) | |
| Appellants/Plaintiffs, | ) ) | |
| vs. | ) ) | No. 49A05-1201-PL-24 |
| CONTINENTAL CASUALTY CO.; TRAVELERS CASUALTY & SURETY CO. & TRAVELERS PROPERTY CASUALTY CO. OF AM.; ACE AM. INS. CO. & CENTURY INDEMNITY CO., INDEMNITY INS. CO. OF N. AM., INS. CO. OF N. AM., & CIGNA INS. CO.; XL INS. AM., INC.; and NORTHERN ASSURANCE CO. OF AM.; | ) ) ) ) ) ) ) ) ) ) | |
| Appellees/Defendants. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Michael D. Keele, Judge

**December 6, 2012**

**OPINION – FOR PUBLICATION**

**BRADFORD, Judge**

## CASE SUMMARY

Several years ago, Thomson, Inc., acquired the assets of Technicolor, Inc., which included, among other things, three contaminated former film-processing sites. Eventually, local environmental authorities directed Thomson to remediate the contamination at the sites, an expensive and ongoing process for which Thomson seeks indemnification from Continental, who insured Technicolor from 1969 to 1974. Thomson argues that the umbrella policy Continental issued to Technicolor covers losses resulting from orders from administrative agencies, as occurred here. Continental argues that its liability is limited to losses resulting from courtroom litigation.

After both parties moved for summary judgment on the question of whether coverage exists, the trial court ruled in Continental's favor. Appellants/Plaintiffs Thomson Inc. n/k/a Technicolor USA, Inc., Technicolor, Inc., and Technicolor, Ltd. (collectively, "Thomson") now appeal from the trial court's grant of summary judgment in favor or Appellee/Defendant Continental Casualty Co. Finding that under California law, damages under the umbrella policy are limited to those as a result of courtroom litigation rather than administrative proceedings, we affirm.

## FACTS AND PROCEDURAL HISTORY

### A. Background

2

Beginning in 1924, Consolidated Film Industries ("CFI") operated a film-processing facility at 959 Seward Street in Hollywood, California. In February of 2000, Technicolor, Inc., of Hollywood, California, purchased CFI. In 2002, operations ceased at the Hollywood facility, and all nine buildings at the facility were demolished in 2005. Beginning in 1936, Technicolor Limited, a wholly-owned English subsidiary of Technicolor, Inc., operated a film-processing facility on Bath Road, West Drayton, United Kingdom. Beginning in 1964, Technicolor, Inc., operated a film-processing facility at 4050 Lankershim Boulevard in North Hollywood, California. In February of 2001, Thomson, Inc., acquired Technicolor, Inc., and Technicolor Limited, consequently also acquiring the three film-processing facilities.

Testing has revealed chlorinated solvent contamination at the Hollywood, North Hollywood, and West Drayton facilities, with the addition of diesel fuel contamination at the North Hollywood site. In 2009, Thomson notified Continental that it had been required by local authorities to clean up the three sites. As of November 9, 2011, remediation had cost approximately $4,800,000 for the Hollywood site, over $1,000,000 for the West Drayton site, and approximately $730,000 for the North Hollywood site, although none had been completely cleaned up.

## B. The Umbrella Policy

From 1969 to 1974, Continental issued three primary liability insurance policies to Technicolor, Inc. From August 15, 1969, to January 1, 1973, Continental also issued one umbrella policy, designated RDU-806-03-36 ("the Umbrella Policy"), to Technicolor, Inc. Coverage B of the Umbrella Policy provides, in relevant part, that

3

The company will indemnify the insured with respect to any occurrence not covered by underlying insurance, or with respect to damages not covered by underlying insurance but which results from an occurrence covered by underlying insurance, for ultimate net loss in excess of the insured's retained limit which the insured shall become obligated to pay as damages by reason of liability imposed upon the insured by law or assumed by the insured under any contract because of

> personal injury
> property damage, or
> advertising injury

to which this coverage applies, caused by an occurrence. The company, with respect to an occurrence not covered in whole or in part by underlying insurance or to which there is no other insurance in any way applicable, shall have the right and duty to defend any suit against the insured seeking damages on account of such personal injury, property damage or advertising injury, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted.

….

"ultimate net loss" means the sums paid as damages in settlement of a claim or in satisfaction of a judgment for which the insured is legally liable after making deductions for all other recoveries … and also includes investigation, adjustment, appraisal, appeal and defense costs paid or incurred by the insured with respect to damages covered hereunder.

Appellant's App. pp. 70, 72.

### C. Procedural History

On July 17, 2008, Thomson filed suit in Marion County Superior Court, seeking coverage from various insurance companies for remediation of the Hollywood, North Hollywood, and West Drayton sites. Continental was added to the suit on September 28, 2009. On March 30, 2011, Thomson moved for partial summary judgment against Continental, seeking a declaration of coverage for the remediation sites under Coverage B of the Umbrella Policy. On August 1, 2011, Continental cross-moved for summary

4

judgment against Thomson, contending, *inter alia*, that under California law the Umbrella Policy did not cover costs and expenses Thomson incurred "to respond to administrative directives to remedy environmental contamination[.]" Appellant's App. p. 525. On December 23, 2011, the trial court granted Continental's summary judgment motion and denied Thomson's as to all three remediation sites.

## DISCUSSION AND DECISION

### Whether the Trial Court Erred in Granting
### Continental's Summary Judgment Motion

When reviewing the grant or denial of a summary judgment motion, we apply the same standard as the trial court. *Merchs. Nat'l Bank v. Simrell's Sports Bar & Grill, Inc.*, 741 N.E.2d 383, 386 (Ind. Ct. App. 2000). Summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Id.*; Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Id.* To prevail on a motion for summary judgment, a party must demonstrate that the undisputed material facts negate at least one element of the other party's claim. *Id.* Once the moving party has met this burden with a prima facie showing, the burden shifts to the nonmoving party to establish that a genuine issue does in fact exist. *Id.* The party appealing the summary judgment bears the burden of persuading us that the trial court erred. *Id.*

Both parties agree that California insurance law governs the merits of this appeal and that the remediation of the three sites at issue is being done pursuant to directives

5

from local environmental agencies. Moreover, Thomson concedes that there is no coverage under the primary liability policies Technicolor, Inc., had with Continental from 1969 to 1974. Thomson argues, however, that coverage exists under the Umbrella Policy. Specifically, Thomson contends that the language of Coverage B and the Umbrella Policy's definition of "ultimate net loss" provide coverage. This argument requires us to evaluate the relevant language of the Umbrella Policy.

Under California law,

> "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." "Such intent is to be inferred, if possible, solely from the written provisions of the contract." "If contractual language is clear and explicit, it governs."
> "A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable." The fact that a term is not defined in the policies does not make it ambiguous. Nor does "[d]isagreement concerning the meaning of a phrase," or "'the fact that a word or phrase isolated from its context is susceptible of more than one meaning.'" "'[L]anguage in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract.'" "If an asserted ambiguity is not eliminated by the language and context of the policy, courts then invoke the principle that ambiguities are generally construed against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of coverage."

*Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.*, 959 P.2d 265, 272-73 (Cal. 1998) (citations omitted).

Under California insurance law, as it relates to commercial general liability policies, "damages" are limited to losses resulting from a "suit," which is understood to refer, in general, to courtroom litigation.

6

[T]he duty to defend a "suit" seeking "damages" under pre-1986 CGL policies is restricted to civil actions prosecuted in a court, initiated by the filing of a complaint, and does not include *claims*, which can denote proceedings conducted by administrative agencies under environmental statutes. Likewise, the duty to indemnify for "'all sums that the insured becomes legally obligated to pay as damages'" ([*Certain Underwriters at Lloyd's of London v. Superior Court*, 16 P.3d 94, 105 (Cal. 2001)]) in the same standard primary policies is limited to money ordered by a court, and does not include expenses such as may be incurred in responding to administrative agency orders.

*CDM Investors v. Travelers Cas. & Sur. Co.*, 139 Cal. Rptr. 3d 669, 674 (Cal. Ct. App. 2006).

Consequently, unless the Umbrella Policy provides coverage for proceedings beyond "suits" or for indemnity for losses beyond "damages," there is no coverage under California law. Thomson argues that the policy's definition of "ultimate net loss" expands the general definition of "damages," while Continental argues that the California Court of Appeal has already addressed and rejected this precise argument in *CDM Investors*. We agree with Continental.

In *CDM Investors*, the court evaluated the following language from the coverage clause, which provided indemnity for "'the ultimate net loss in excess of the applicable underlying limit which the insured shall become legally obligated to pay as damages.'" 43 Cal. Rptr. 3d at 676. The *CDM Investors* court concluded that coverage did not extend beyond "damages," observing that "[t]he coverage clause imposing the duty to indemnify is clear in its limitation to court-rendered damages. It states: 'The company will pay … the ultimate net loss … which the insured shall become legally obligated to pay … *as damages*.'" *Id*. at 677 (emphasis in *CDM Investors*).

7

The coverage language in the Umbrella Policy is legally indistinguishable from the above, and so we reach the same conclusion as did the *CDM Investors* court. The coverage clause in the Umbrella Policy provides that "[t]he company will indemnify the insured … for ultimate net loss … which the insured shall become obligated to pay *as damages*[.]" Appellant's App. p. 70 (emphasis added). Just as clearly as it did in the policy at issue in *CDM Investors*, the coverage clause in the Umbrella Policy limits "ultimate net loss" to "damages."

Indeed, the Umbrella Policy's language points even more strongly to a lack of coverage than did the policy language in *CDM Investors*. Specifically, the Umbrella Policy's definition of "ultimate net loss" is *also* explicitly limited to "damages," whereas the definition of the same term in *CDM Investors* was not:[1]

> "ultimate net loss" means the sums paid *as damages* in settlement of a claim or in satisfaction of a judgment for which the insured is legally liable after making deductions for all other recoveries … and also includes investigation, adjustment, appraisal, appeal and defense costs paid or incurred by the insured *with respect to damages* covered hereunder.

Appellant's App. p. 72 (emphases added). Following the California Court of Appeal's decision in *CDM Investors*, we conclude that the Umbrella Policy limits Continental's indemnity obligations to "damages." Consequently, Continental has no obligation to

---

[1] "The policy later defines 'ultimate net loss' as 'the sum actually paid or payable in cash in the settlement or satisfaction of any claim or suit for which the insured is liable either by adjudication or settlement with the written consent of the company.'" *CDM Investors*, 43 Cal. Rptr. 3d at 676.

indemnify Thomson for the remediations of the Hollywood, North Hollywood, and West Drayton sites as a matter of law.[2]

The judgment of the trial court is affirmed.[3]

VAIDIK, J., and CRONE, J., concur.

---

[2] Thomson urges us to apply the holding of the California Supreme Court in *Powerine Oil Co. v. Superior Court*, 118 P.3d 589 (Cal. 2005) (*Powerine II*), in which coverage was found despite the lack of courtroom litigation. The coverage clauses at issue in *Powerine II*, however, specifically included coverage for "damages, direct or consequential *and expenses* ....[,]" which led the Court to conclude that "the addition of the term 'expenses' in the central insuring clause of these excess/umbrella policies extends coverage beyond the limitation imposed were the term 'damages' used alone, and thereby enlarges the scope of coverage beyond 'money ordered by a court.'" *Id.* at 602 (emphasis in *Powerine II*). As previously mentioned, the Umbrella Policy's coverage is expressly limited to "damages." Thomson's reliance on *Powerine II* is unavailing.

[3] Because we conclude that the language of the Umbrella Policy precludes coverage, we need not address Continental's arguments that there is no coverage for additional reasons specific to each of the three sites.

9